UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LARRY DARNELL JONES,

                Plaintiff,                 Case No. 1:17-cv-406

v.                                                  Honorable Robert J. Jonker

HEIDI E. WASHINGTON et al.,

                Defendants.
_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington, McGee, Trierweiler, Mackie, Ball, Thomas, Cusack, Wakefield, and Welton. The Court will serve the complaint against Defendant Johnson, but only with respect to Plaintiff's claim for the use of excessive force on May 13, 2016.

**Factual Allegations**

Plaintiff Larry Darnell Jones is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF). He is serving a 30 to 50 year sentence which began on November 5, 1985. (Time Review and Disposition, ECF No. 1-1, PageID.29.) The matters of which he complains, however, occurred over the last couple of years at Bellamy Creek Correctional Facility (IBC) and Marquette Branch Prison (MBP) as well as ECF. Plaintiff sues MDOC Director Heidi Washington; MDOC Deputy Director Kenneth McKee; IBC Warden Tony Trierweiler; ECF Warden Thomas P. Mackie; ECF Deputy Warden Timothy J. Ball; ECF Resident Unit Manager Unknown Thomas; MDOC Inspectors N. Cusack, Unknown Wakefield, and Unknown Welton; and IBC Corrections Officer Unknown Johnson.

Plaintiff's allegations are rambling, disjointed, repetitive, and conclusory. They are a far cry from the short and plain statement of the claim mandated by Federal Rule of Civil Procedure 8. Construed liberally, Plaintiff seeks to raise several claims: (1) an "excessive use of force" Eighth Amendment claim against Defendant Johnson for tightening Plaintiff's handcuffs too much on May 13, 2016; (2) a "failure to protect" Eighth Amendment claim for not keeping Plaintiff safe from Defendant Johnson; (3) a "failure to protect" Eighth Amendment claim for failing to protect Plaintiff from Security Threat Group (STG) members; (4) a First Amendment retaliation claim against several defendants who Plaintiff claims have taken adverse action against him (such as excessive use of force, failure to protect, prison transfers, and denying restoration of good-time credits) because Plaintiff filed grievances; (5) a First Amendment claim for the Defendants' various failures to properly investigate and process Plaintiff's many grievances; (6) a non-specific

constitutional claim, perhaps grounded in the Due Process Clause, seeking to compel Defendants to restore good-time credits to Plaintiff. The relevant facts are set forth in the analysis of each claim.

**Discussion**

I. <u>Failure to state a claim - standard of review</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

II.     Eighth Amendment - use of excessive force

Plaintiff alleges that on May 13, 2016, Defendant Johnson injured Plaintiff's left and right wrist by purposefully putting the handcuffs on too tight while Defendant Johnson was escorting Plaintiff to a medical appointment. (Compl., ECF No. 1, PageID.10.)   Plaintiff remained in the handcuffs through the duration of the appointment and returned to his cell.  Plaintiff told the doctor and the nurse that his handcuffs were too tight, but they did not take any action.  When he complained later that day, a nurse provided Plaintiff some ointment for the cut on his wrist. Although Plaintiff requested x-rays a couple of weeks later, he was refused because the healthcare staff concluded x-rays were not medically indicated.

The Eighth Amendment prohibits the imposition of "cruel and unusual punishments" upon prisoners. U.S. CONST. amend. VIII.  But not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs*, 315 F.3d at 556 (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)).  Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain."

*Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 Fed.Appx. 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. We ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). This component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8, (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* The *Wilkins* Court did not declare the extent of injury to be irrelevant:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. *Id.* at 7, 112 S.Ct. 995. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Ibid.*(quoting *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078). The extent of injury may also provide some indication of

the amount of force applied. As we stated in *Hudson*, not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9, 112 S.Ct. 995. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Ibid.* (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Ibid.* (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973)).

*Wilkins*, 559 U.S. at 37-38.

Plaintiff's complaint parrots each of the elements of an excessive use of force claim, but is short on factual detail. His allegations are utterly conclusory. Nonetheless, Plaintiff alleges that Defendant Johnson placed the handcuffs on too tightly, that he did so maliciously and sadistically, that it caused Plaintiff pain, that Plaintiff complained to Defendant Johnson, that Defendant Johnson ignored those complaints, and that Plaintiff suffered injury (a cut on his wrist) as a result of Defendant Johnson's use of excessive force. Plaintiff has stated a claim.[1]

Plaintiff's sufficient statement of the claim, however, extends no further than Defendant Johnson. Plaintiff's claim that Defendants Washington, McKee, Trierweiler, Cusack, Wakefield, or Welton are somehow responsible for Defendant Johnson's use of excessive force by virtue of their respective roles in investigating or deciding Plaintiff's grievances is meritless. Plaintiff fails to make specific factual allegations against those Defendants, other than his claim that they failed to conduct an appropriate investigation or properly respond to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New*

---

[1] *See, e.g., Courtright v. City of Batle Creek*, 839 F.3d 513, 520 (6th Cir. 2016); *Baynes v. Cleland*, 799 F.3d 600, 608 (6th Cir. 2015).

*York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff's attempt to impose liability on Defendants other than Johnson because those other Defendants failed to protect Plaintiff from Johnson is also unavailing. To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, Plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that Defendant Johnson would cause Plaintiff serious harm " *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

Plaintiff allegations foreclose such a showing here. In the documents attached to Plaintiff's complaint, he notes that Defendant Johnson had never done anything like an excessive use of force before. (ECF No. 1-1, PageID.52.) Based on those allegations, Plaintiff cannot show

Defendants were deliberately indifferent to a risk that Defendant Johnson would cause Plaintiff serious harm.

Even if Plaintiff's allegations suffice to state an Eighth Amendment excessive force claim against Defendant Johnson, Plaintiff has failed to allege that Defendants Washington, McKee, Trierweiler, Cusack, Wakefield, or Welton engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### III. Eighth Amendment - failure to protect Plaintiff from STG members

Plaintiff's complaint reveals that before he entered prison he worked as a corrections officer for the MDOC. (ECF No. 1, PageID.15.) Of his own volition, he has been in some form of segregation for almost thirty years. (*Id*.) He has refused to return to general population because other prisoners know he is a former guard and, Plaintiff states, several STGs have a "stab on sight" order regarding Plaintiff. For that reason, he was placed in temporary segregation when he was transferred to MBP on June 8, 2016. And, for that reason, the MBP Security Classification Committee recommended transfer to a facility that could better accommodate Plaintiff's protection needs. He was transferred to ECF on August 18, 2016.

At ECF, it was determined that Plaintiff was eligible for protective housing; however, because no beds were available, he is staying in temporary segregation, the next most protective level of housing, for the time being. It is difficult to sort out the nature of Plaintiff's "failure to protect" claim. He notes that he sought a special problem offender notice (SPON), a notice that would ensure he was not housed with particular inmates who pose a genuine threat to Plaintiff's safety. The SPON review was completed at ECF; however, because Plaintiff would not identify any specific inmates who posed a threat, no SPON was issued. Plaintiff acknowledges that he is waiting for a bed in

protective housing. He does not allege he has suffered any harm in temporary segregation while waiting.

No matter what level of risk Plaintiff faces because of his status as a former corrections officer, he has alleged no facts to support his conclusory claim that any of the Defendants have been deliberately indifferent to that risk. To the contrary, they have responded by permitting him the most secure available housing for thirty years. To the extent Plaintiff contends that Defendants' failure to issue a SPON evidences a failure to protect, it appears that he misunderstands the purpose and effect of a SPON.

SPONs are issued to either (A) identify particularly dangerous inmates or (B) to identify inmates who have a known conflict. MDOC Policy Directive 03.03.110 ¶ E (eff. 5/20/2002). For either purpose, it is imperative that the MDOC know the identity of the inmate who poses the threat. The SPON is then used to keep the threatener from being housed with the threatened. It is Plaintiff's failure to identify the inmates that pose the threat, not the deliberate indifference of the Defendants, that prevent the issuance of a SPON. Plaintiff has failed to state an Eighth Amendment claim for failure to protect him from STG members.

IV. First Amendment retaliation

Plaintiff claims that every action taken by Defendants (the handcuffs, the refusal to restore good time, the transfers, the failures to protect, the cover-up of these wrongs, and the refusal to issue a SPON) were all taken in retaliation for Plaintiff's exercise of his First Amendment rights, specifically, the filing of grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must

establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Even if one accepts that the various wrongs alleged by Plaintiff constitute sufficiently adverse actions, however, he has still failed to state a claim because he alleges no facts to show that the adverse actions were motivated by the protected conduct.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v.*

*Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendants' actions were motivated by any of his protected conduct. He merely concludes that because he filed some grievances within a few weeks or months before Defendants' actions, their actions must have been motivated by his grievances. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). Plaintiff merely alleges temporal proximity between Defendants' conduct and his many grievances. Such allegations are insufficient to state a retaliation claim.

    V.    <u>Claim for failed grievance procedure</u>

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison

grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 Fed. App'x 411, 415-416 (6th Cir. 2014) (citing *North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n. 6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available*

administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim.

VI. Claim for restoration of good time credits and immediate release

Plaintiff claims he is entitled to the restoration of good time credits that, if restored, would require his immediate release. He is not challenging his criminal conviction; nor is he challenging the procedures that resulted in his forfeiture of good time credits in the first instance. His claim appears to be entirely directed to the failure to restore good time credits that have been appropriately forfeited.

The MDOC policy directive regarding good time credits creates, for each prisoner eligible to earn good time credits, a Good Time Committee chaired by the prisoner's Resident Unit Manager and comprised of a Resident Unit Officer and one or more of the following: Assistant Resident Unit Supervisor, Case Manager, Counselor, or Social Worker. MDOC Policy Directive 03.01.100 (eff. 5/11/2009). The Good Time Committee meets regularly for the purpose of awarding special good time credits and recommending to the Warden whether forfeited good time credits should be restored. *Id.* The directive provides that prisoners have no right to the restoration of good time credits; it is entirely within the discretion of the Good Time Committee and the Warden, and must be approved by the CFA Deputy Director. *Id.*

The constitutional foundation of Plaintiff's claim is not apparent from his complaint; but, he contends that he is entitled to the restoration of good time credits, he seeks restoration

- 13 -

through this proceeding, and if his request for relief is granted, he should be released immediately. He apparently contends that the process whereby his good time credits were not restored is unlawful.

A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Therefore, to the extent that Plaintiff's complaint challenges the fact or duration of his incarceration, it must be dismissed. *See Adams v. Morris*, 90 F. App'x 856, 858 (6th Cir. 2004) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *see also Moore v. Pemberton*, 110 F.3d 22, 23-24 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253(c), (4) differing fee requirements, (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)).

To the extent Plaintiff seeks injunctive, declaratory and monetary relief for alleged violations of Constitutional rights, his claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original). In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would

render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87 (footnote omitted). The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief. *See Edwards*, 520 U.S. at 646-48 (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189-90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief). Plaintiff's allegations clearly call into question the validity of the decision to not restore his forfeited good time credits which, in turn, affects the duration of his sentence. Therefore, his action is barred under *Heck* until his decision denying restoration has been invalidated.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Washington, McGee, Trierweiler, Mackie, Ball, Thomas, Cusack, Wakefield, and Welton will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Johnson, but only with respect to Plaintiff's claim for the use of excessive force on May 13, 2016.

An Order consistent with this Opinion will be entered.


Dated:  June 2, 2017         /s/ Robert J. Jonker
                             ROBERT J. JONKER
                             CHIEF UNITED STATES DISTRICT JUDGE