UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

LARRY DARNELL JONES,

                Plaintiff,                          Case No. 1:17-cv-406

v.                                            Honorable Robert J. Jonker

HEIDI E. WASHINGTON et al.,

                Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff sought leave to proceed *in forma pauperis*. By order entered May 15, 2017 (ECF No. 6), the Court denied Plaintiff's motion under the "three strikes" rule. Plaintiff then timely paid the $400.00 filing fee.

        Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court reviewed Plaintiff's complaint under the applicable standard and dismissed Plaintiff's complaint against Defendants Washington, McKee, Trierweiler, Mackie, Ball, Thomas, Cusack, Wakefield, and Welton for failure to state a claim. (Op. and Ord., ECF No. 9-10) The Court ordered the complaint served against Defendant Johnson, but only with respect to Plaintiff's claim for the use of excessive force on May 13, 2016.

Plaintiff responded to the Court's opinion and order with a flurry of objections and motions, including a motion seeking leave to file an amended complaint. By order entered July 19, 2017 (ECF No. 24), the Court denied that motion as unnecessary because Rule 15(a) permits Plaintiff to amend as a matter of course under the circumstances. Plaintiff's first amended complaint is now before the Court for review as required by the PLRA.

The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Washington, McKee, Trierweiler, Mackie, Ball, Thomas, Cusack, Wakefield, Welton, Horsley, Freeman, McDanieal, Messer, Bursh, Porter, Dumas, Smith, Griffin, and Spencley. The Court will serve the complaint against Defendant Johnson, but only with respect to Plaintiff's claim for the use of excessive force on May 13, 2016.

## Factual Allegations

Plaintiff Larry Darnell Jones is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF). He is serving a 30 to 50 year sentence which began on November 5, 1985. (Time Review and Disposition, ECF No. 1-1, PageID.29.)[1] The matters of which he complains, however, occurred over the last couple of years at Bellamy Creek Correctional Facility (IBC) and Marquette Branch Prison (MBP) as well as ECF. Plaintiff sues MDOC Director Heidi Washington; MDOC Deputy Director Kenneth McKee; IBC

---

[1]Plaintiff's first amended complaint entirely supercedes his initial complaint. *Drake v. City of Detroit*, 266 F. App'x 444, 448 (6th Cir. 2008) ("[A]n amended complaint supercedes all prior complaints[.]"). The Time Review and Disposition document attached to Plaintiff's initial complaint is not attached to his first amended complaint. Nonetheless, Plaintiff alleges in both complaints that Warden Napel refused to restore good time credits on July 26, 2016. (Compl., ECF No. 1, PageID.9; First Am. Compl., ECF No. 25, PageID.447.) The Time Review and Disposition document evidences that refusal.

Warden Tony Trierweiler; ECF Warden Thomas P. Mackie; ECF Deputy Warden Timothy J. Ball;

ECF Resident Unit Manager Unknown Thomas; MDOC Inspectors N. Cusack, Unknown Wakefield,

and Unknown Welton; and IBC Corrections Officer Unknown Johnson.  Plaintiff's first amended

complaint adds several new Defendants: ECF Corrections Officers Horsley, Freeman, McDanieal,

Messer, and Bursch; ECF Sergeant Porter; ECF Nurse Lori L. Dumas; ECF Warden's Administrative

Assistant Eric Smith; ECF Inspector Spencley; and MDOC Adminstrator Miffer Griffin.

With respect to Plaintiff's initial complaint, the Court noted that his allegations were

rambling, disjointed, repetitive, and conclusory.  Plaintiff has not corrected those problems in his

first amended complaint.  Indeed, Plaintiff's first amended complaint is virtually word-for-word

identical to his initial complaint except for the following additions:

(1)     Plaintiff identifies the new Defendants (First Am. Compl., ECF No. 25, PageID.3-5);

(2)     Plaintiff provides additional detail with regard to the treatment of the injuries to his wrists following the "excessive use of force" on May 13, 2016 (*Id*., PageID.8-11);[2] and

(3)     Plaintiff adds an entirely new claim regarding Defendant Horsley's excessive use of force (pounding on Plaintiff's chest) during a shakedown on November 13, 2016, at ECF (*Id*., PageID.12-24).[3]

As was the case with Plaintiff's initial complaint allegations, Plaintiff's first amended complaint

allegations are a far cry from the short and plain statement of the claim mandated by Federal Rule

of Civil Procedure 8.

---

[2]Plaintiff also attaches additional exhibits to his first amended complaint, including his health care services records relating to treatment for his wrist injuries.  (ECF No. 25-1, PageID.462-473.)

[3]Plaintiff attaches to his first amended complaint his health care services record relating to the treatment he received for the injuries allegedly resulting from the alleged chest pounding; grievances relating to the incident; and documents relating to the misconduct reports and hearing reports that followed what Defendants characterized as Plaintiff's false accusations against Defendant Horsley.  (ECF No. 25-1, PageID.474-505.)

The Court construed the allegations in Plaintiff's initial complaint, and will construe the identical allegations in his first amended complaint, as seeking to raise several claims: (1) an "excessive use of force" Eighth Amendment claim against Defendant Johnson for tightening Plaintiff's handcuffs too much on May 13, 2016 at IBC; (2) a "failure to protect" Eighth Amendment claim for not keeping Plaintiff safe from Defendant Johnson at IBC; (3) a "failure to protect" Eighth Amendment claim for failing to protect Plaintiff from Security Threat Group (STG) members at ECF; (4) a First Amendment retaliation claim against several defendants who Plaintiff claims have taken adverse action against him (such as excessive use of force, failure to protect, prison transfers, and denying restoration of good-time credits) because Plaintiff filed grievances, including the December 27 2015, grievance that started it all, seeking to compel Defendants Trierweiler and McKee to restore previously forfeited special disciplinary credits or good time[4]; and (5) a First Amendment claim for the Defendants' various failures to properly investigate and process Plaintiff's many grievances.

The new claims in Plaintiff's first amended complaint include the following: (6) a core allegation that Defendant Horsley, on November 13, 2016, used excessive force against Plaintiff, pounding Plaintiff's chest during a shakedown; (7) that Defendants Freeman and McDanieal are liable because they ordered the shakedown; (8) that Defendants Porter, Dumas,

---

[4]The Court also initially proceeded as if Plaintiff had attempted to raise a non-specific constitutional claim, perhaps grounded in the Due Process Clause, seeking to compel Defendants to restore good-time credits to Plaintiff. In his objections to the Court's opinion, Plaintiff contended that the Court had mischaracterized the complaint. Plaintiff noted that his reference to the failure to restore "good time" was necessary background to the claim relating to Defendant Johnson's excessive use of force because, Plaintiff contends, that use of force was in retaliation for Plaintiff's December 27, 2015, grievance against Defendants Trierweiler and McKee for failing to restore the "good time." (Objections, ECF No. 16, PageID.297-298.)  The Court will, therefore, not construe the identical allegations in Plaintiff's first amended complaint as attempting to raise a claim for the restoration of "good time."

Messer, McDaniel, Freeman, and Bursh, failed to protect Plaintiff from Horsley; (9) that Defendants

Mackie and Ball mishandled Plaintiff's grievance regarding the incident; (10) that Defendants Porter,

Dumas, and Horsley retaliated against Plaintiff for filing the grievance by lying on reports and filing

false misconducts against Plaintiff; and (11) that Defendants McKee, Mackie, Smith, Griffin, and

Spencley failed to protect Plaintiff and retaliated against him for filing the grievance by permitting

a false misconduct charge.

### **Discussion**

I.     Misjoinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit,

whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims.  Rule 20(a)(2) governs

when multiple defendants may be joined in one action:  "[p]ersons . . . may be joined in one action

as defendants if:  (A) any right to relief is asserted against them jointly, severally, or in the alternative

with respect to or arising out of the same transaction, occurrence, or series of transactions or

occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Rule 18(a) states:  "A party asserting a claim . . . may join, as independent or alternative claims, as

many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the

analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is
> more than one party on one or both sides of the action.  It is not concerned with
> joinder of claims, which is governed by Rule 18.  Therefore, in actions involving
> multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in
> a single action only if plaintiff asserts at least one claim to relief against each of them

that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 CHARLES ALLEN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE CIVIL § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778.   When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts of . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Michigan Dep't of Corrections*, 2007 WL 4465247, *3 (E.D. Mich. December 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts.  *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004).  Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1).   These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by

- 6 -

liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

> A buckshot complaint that would be rejected if filed by a free person -- say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions -- should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3rd Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998); *Shephard v. Edwards*, 2001 WL 1681145, * 1 (S.D. Ohio Aug[.] 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because

it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with these improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions.

Plaintiff's first set of allegations concerns Defendant Johnson's alleged excessive use of force on May 13, 2016. Plaintiff contends that Defendant Johnson's use of force was a violation of not only the Eighth Amendment, but the First Amendment as well, because it was retaliatory for Plaintiff's filing of a grievance on December 27, 2015. Plaintiff raises other claims that are related to Defendant Johnson's conduct on May 13, 2016. He claims that Defendants Washington, Trierweiler, Cusack, Welton, and Wakefield were responsible because they mishandled the grievances or investigations that followed the event. The Court has addressed these claims at length in its initial opinion partially dismissing Plaintiff's action. Because Plaintiff's allegations regarding these claims are identical in both complaints, the Court's analyses of Plaintiff's allegations in both complaints and conclusions regarding the sufficiency of those allegations are identical as well. As set forth fully below, Plaintiff's allegations suffice to state an Eighth Amendment claim against Defendant Johnson for excessive use of force on May 13, 2016, at IBC; but, in all other respects, his allegations against Defendants Johnson, Washington, Trierweiler, Cusack, Welton, and Wakefield related to the May 13, 2016 incident fail to state a claim.

For purposes of determining the propriety of joinder, the Court must determine whether Plaintiff's remaining claims against McKee, Mackie, Ball, Horsley, Freeman, McDanieal,

Messer, Bursch, Porter, Dumas, Smith, and Griffin, relating to Horsley's excessive use of force at ECF on November 13, 2016, (and the grievances and misconduct proceedings that followed); or against McKee, Mackie, Ball, Thomas, and Spencley, relating to the Defendants' failure to protect Plaintiff from threats at ECF, are part of the same series of transactions and occurrences as Plaintiff's first claim against Johnson. The Court concludes they are not. They are distinct in time, place, and participants.

Plaintiff attempts to create some relationship between the disparate occurrences by claiming all of these events are retaliatory for his filing of grievances. Plaintiff's allegations are hopelessly conclusory. He does little more than repeat the word retaliation. As set forth in the Court's June 2, 2017, opinion partially dismissing Plaintiff's claims, Plaintiff has failed to state a claim.

Plaintiff claims that every action taken by Defendants (the handcuffs, the transfers, the failures to protect, the cover-up of these wrongs, and the refusal to issue a SPON, the chest pounding, and the false misconducts) were all taken in retaliation for Plaintiff's exercise of his First Amendment rights, specifically, the filing of grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037

(6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

      The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).  Even if one accepts that the various wrongs alleged by Plaintiff constitute sufficiently adverse actions, however, he has still failed to state a claim because, with the exception of the "false misconduct" retaliations,[5] he alleges no facts to show that the adverse actions were motivated by the protected conduct.

      It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).  "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v.*

---

[5]Almost all of the new Defendants are accused of playing some role in preparing, authorizing, or prosecuting the misconduct reports that stated Plaintiff filed a grievance falsely accusing Defendant Horsley of using excessive force. Obviously, with respect to that allegedly retaliatory action, there is a causal link between the protected conduct and the retaliatory act.  However, Plaintiff alleges no facts to link that retaliation to his allegations that Johnson used excessive force in retaliation for the December 27, 2015, grievance.  The two claims are wholly unrelated: different instances of protected conduct; different adverse actions; different motivations; different participants; different time; and different place.

*Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening).  In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'"  *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)).  However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive."  *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation.  He alleges no facts from which to reasonably infer that Defendants' actions were motivated by any of his protected conduct.  He concludes that because he filed some grievances within a few weeks or months before Defendants' actions, their actions must have been motivated by his grievances.  The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim.  *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010).  This is especially true where, as here, the plaintiff is a prolific filer of grievances.  *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews").  Plaintiff alleges nothing more than temporal proximity between Defendants' conduct and his many grievances.  Such allegations are insufficient to state a retaliation claim.

More importantly, for purposes of considering the propriety of joinder, Plaintiff's threadbare allegations do not permit any inference of connection between the allegedly retaliatory

- 11 -

conduct at IBC and the allegedly retaliatory conduct at ECF.  Because the claims arise from distinct transactions and occurrences, they are not properly joined in this action.

The only other common element in Plaintiff's three disparate core claims is MDOC Director Heidi Washington.  In three instances, Plaintiff notes that Defendant Washington "had Richard Russell . . . deny the third step [of Plaintiff's] . . . Grievance . . . ." (First Am. Compl., ECF No. 25, PageID.446, 448, 456.)  Plaintiff's attempt to cast Defendant Washington as the common element between the claims is unavailing.  Essentially, Plaintiff claims that because Defendant Washington plays a supervisory role with respect to all MDOC personnel, she connects all of his claims.  That connection is for too attenuated to justify joining Plaintiff's claims in one action.

Plaintiff fails to make specific factual allegations of wrongful conduct against Defendant Washington.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

- 12 -

If Plaintiff had alleged that Defendant Washington, or any of the Defendants,[6] played some active role in all of his claims, that might be sufficient to establish enough of a connection to permit his otherwise disparate claims to be joined.  Here, however, as with Plaintiff's omnibus retaliation scheme, the allegations against Washington that might support a finding of connection are illusory.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action."  Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately.  *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("Parties may be dropped . . . by order of the court . . . of its own initiative at any stage of the action and on such terms as are just.").  "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'"  *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties."  *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV, Inc.*, 467

---

[6]Defendants Trierweiler and McKee are also referenced in more than one of Plaintiff's claims; however, because they played no more active a role than Washington did in the May 13, 2016, excessive use of force claim, the references are likewise insufficient to connect the claims and thereby support joinder.

F.3d at 845.  Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice.  *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Building Co.*, 848 F.2d at 682.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983.  For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years.  *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).  Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice."  *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

The actions about which Plaintiff complains occurred in 2016 and 2017, well within the three-year period of limitations.  Those claims are not at risk of being time-barred.  Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dismissed.  Accordingly, the Court will exercise its discretion under Rule 21 and dismiss, for misjoinder, the claims relating to Plaintiff's transfer from IBC, the November 13, 2016, excessive use of force at ECF, and the failure to protect with protective housing placement and SPONs at ECF, against Defendants Washington, McKee, Trierweiler, Mackie, Ball, Thomas, Horsley, Freeman, McDanieal, Messer, Bursh, Porter, Dumas, Smith, Griffin, and Spencley, without prejudice to the institution of new, separate lawsuits by Plaintiff against those Defendants.[7]  *See Coughlin*, 130 F.3d at 1350 ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the

---

[7]As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants who are transactionally related to one another.

- 14 -

institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

## II.    Failure to state a claim - standard of review

The Court will review Plaintiff's claims relating to the May 13, 2016 excessive use of force as required by the PLRA.[8]  A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

---

[8]The Court's analysis herein mirrors the analysis in the Court's June 2, 2017, opinion.

- 15 -

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.    Eighth Amendment - use of excessive force

Plaintiff alleges that on May 13, 2016, Defendant Johnson injured Plaintiff's left and right wrist by purposefully putting the handcuffs on too tight while Defendant Johnson was escorting Plaintiff to a medical appointment. (First Am. Compl., ECF No. 25, PageID.318-320.) Plaintiff remained in the handcuffs through the duration of the appointment and returned to his cell. Plaintiff told the doctor and the nurse that his handcuffs were too tight, but they did not take any action. When he complained later that day, a nurse provided Plaintiff some ointment for the cut on his wrist. Although Plaintiff requested x-rays a couple of weeks later, he was refused because the healthcare staff concluded x-rays were not medically indicated.

The Eighth Amendment prohibits the imposition of "cruel and unusual punishments" upon prisoners. U.S. CONST. amend. VIII. But not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs*, 315 F.3d at 556 (citing *Pelfrey v.*

*Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)).  Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 Fed.Appx. 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim.  *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)).  First, "[t]he subjective component focuses on the state of mind of the prison officials."  *Williams*, 631 F.3d at 383.  We ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.' "  *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  This component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.' "  *Hudson*, 503 U.S. at 8, (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).   "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident."  *Hudson*, 503 U.S. at 9.  "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."  *Id.*  The *Wilkins* Court did not declare the extent of injury to be irrelevant:

This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. *Id.* at 7, 112 S.Ct. 995. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Ibid.*(quoting *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078). The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson*, not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9, 112 S.Ct. 995. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Ibid.* (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Ibid.* (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973)).

*Wilkins*, 559 U.S. at 37-38.

Plaintiff's complaint parrots each of the elements of an excessive use of force claim, but is short on factual detail. His allegations are utterly conclusory. Nonetheless, Plaintiff alleges that Defendant Johnson placed the handcuffs on too tightly, that he did so maliciously and sadistically, that it caused Plaintiff pain, that Plaintiff complained to Defendant Johnson, that Defendant Johnson ignored those complaints, and that Plaintiff suffered injury (a cut on his wrist) as a result of Defendant Johnson's use of excessive force. Plaintiff has stated a claim.[9]

Plaintiff's sufficient statement of the claim, however, extends no further than Defendant Johnson. Plaintiff's claim that Defendants Washington, Trierweiler, Cusack, Wakefield, or Welton are somehow responsible for Defendant Johnson's use of excessive force by virtue of their respective roles in investigating or deciding Plaintiff's grievances is meritless. Plaintiff fails to make specific factual allegations against those Defendants, other than his claim that they failed to conduct an appropriate investigation or properly respond to his grievances. Government officials may not

---

[9]*See, e.g., Courtright v. City of Batle Creek*, 839 F.3d 513, 520 (6th Cir. 2016); *Baynes v. Cleland*, 799 F.3d 600, 608 (6th Cir. 2015).

be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *See* pp. 12-13, *infra*.  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *Id.*

Plaintiff's attempt to impose liability on Defendants other than Johnson because those other Defendants failed to protect Plaintiff from Johnson is also unavailing. To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, Plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that Defendant Johnson would cause Plaintiff serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995).  *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

Plaintiff does not allege that the Defendants knew of a risk, much less a substantial risk, that Defendant Johnson would cause Plaintiff serious harm.  Indeed, the documents Plaintiff has submitted to the Court foreclose such a showing here.  In those documents Plaintiff notes that Defendant Johnson had never done anything like an excessive use of force before.  (ECF No. 1-1, PageID.52.)  Thus, Plaintiff cannot show Defendants were deliberately indifferent to a risk that Defendant Johnson would cause Plaintiff serious harm.

Even if Plaintiff's allegations suffice to state an Eighth Amendment excessive force claim against Defendant Johnson, Plaintiff has failed to allege that Defendants Washington, Trierweiler, Cusack, Wakefield, or Welton engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

- 19 -

IV.    First Amendment retaliation

Plaintiff claims that Defendant Johnson used excessive force on May 13, 2016, in retaliation for Plaintiff's exercise of his First Amendment rights, specifically, the filing of a grievance on December 27, 2015.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See* pp. 9-12, *infra*.  Plaintiff has failed to state a claim because he alleges no facts to show that the use of excessive force was motivated by the protected conduct.  *Id.*

**Conclusion**

With respect to Plaintiff's claims relating to the use of excessive force on May 13, 2016, Defendants Washington, Trierweiler, Cusack, Wakefield, and Welton will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c).  The case will proceed against Defendant Johnson, but only with respect to Plaintiff's Eighth Amendment claim.

With respect to Plaintiff's other claims against Defendants Washington, McKee, Trierweiler, Mackie, Ball, Thomas, Horsley, Freeman, McDanieal, Messer, Bursh, Porter, Dumas, Smith, Griffin, and Spencley, they will be dismissed without prejudice to the institution of new, separate lawsuits by Plaintiff against those Defendants.

An Order consistent with this Opinion will be entered.


Dated:    July 27, 2017                    /s/ Robert J. Jonker
                                           ROBERT J. JONKER
                                           CHIEF UNITED STATES DISTRICT JUDGE


- 20 -